IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| EARNEST E. DAILEY, JR., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )  CV 121-113 |
| | ) |
| ANNETTIA TOBY, Warden, | ) |
| | ) |
| Respondent. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner brings the above-captioned petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter is currently before the Court on Respondent's motion to dismiss the petition as untimely. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED**, (doc. no. 11), this petition be **DISMISSED** as untimely, and a final judgment be **ENTERED** in favor of Respondent.

**I.    BACKGROUND**

In 2013, a jury in the Superior Court of Richmond County, Georgia, acquitted Petitioner of malice murder but convicted him of felony murder, and the trial court sentenced Petitioner to life in prison. (Doc. no. 12-7, Dailey v. State, 774 S.E.2d 672 (Ga. 2015).) The Georgia Supreme Court affirmed Petitioner's conviction on June 29, 2015. (Id.) Petitioner did not pursue any additional direct appeal proceedings.

Petitioner filed a state petition for a writ of habeas corpus in the Superior Court of Macon County on June 10, 2016.[1]  (Doc. no. 12-1, Dailey v. McLaughlin, Civ. Act. No. 2016-CV-00102 (Macon Cnty. Sup. Ct. June 10, 2016.)  Petitioner amended his state petition on April 10, 2017.  (Doc. no. 12-2; see also doc. no. 12-3, pp. 2-3 (explaining Petitioner's choice to proceed only with four grounds in amended petition).)  The state habeas court held a hearing on October 31, 2017, and denied relief in a written order filed April 8, 2020.  (Doc. no. 12-3.)  The Georgia Supreme Court denied a Certificate of Probable Cause to Appeal ("CPC") on September 28, 2020.  (Doc. no. 12-5, Dailey v. Perry, S20H1207 (Ga. Sept. 28, 2020).)  The remittitur issued on October 27, 2020.  (Doc. no. 12-6.)

Petitioner executed the instant federal habeas corpus petition on July 13, 2021, and he originally filed it in the Middle District of Georgia.  (Doc. no. 1, pp. 1, 15.)  Chief United States District Judge Marc T. Treadwell transferred the petition to the Southern District of Georgia because Petitioner challenges a conviction obtained in the Superior Court of Richmond County.  (Doc. no. 4.)  Petitioner raises several claims for relief based on alleged ineffective assistance of trial and appellate counsel, as well as alleged trial court errors.  (See generally doc. nos. 1, 14, 16.)  Respondent moves to dismiss the federal petition as time-barred under 28 U.S.C. § 2244(d).  (See doc. no. 11.)  Petitioner opposes the motion, arguing primarily his rights have been violated since criminal proceedings commenced against him in state court, and upon receipt of his counsel's files in 2017, he realized multiple errors had been made in counsel's representation and in rulings by the trial court.  (See doc. nos. 14, 16.)

---

[1] Petitioner dated his state habeas petition June 7, 2016 (doc. no. 12-1, p. 7), but in Georgia, the mailbox rule does not apply to the original filing of *pro se* state habeas petitions.  See Roberts v. Cooper, 691 S.E.2d 875, 877-78 (Ga. 2010).  Thus, state habeas petitions are filed on the date the clerk receives it, not the date a petitioner signs it.

2

II.     DISCUSSION

   A.     **The Petition Should Be Dismissed as Time-Barred**

Pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244(d), there is a one-year statute of limitations for § 2254 petitions that runs from the latest of:

> (1)(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Under § 2244(d)(1)(A), a judgment becomes final upon "the conclusion of direct review or the expiration of the time for seeking such review." Here, the Georgia Supreme Court affirmed Petitioner's conviction on June 29, 2015. Dailey, 774 S.E.2d at 672. Petitioner did not seek a writ of certiorari from the United States Supreme Court, and his conviction therefore became final ninety days later on September 28, 2015.[2] See Gonzalez v. Thaler, 565

---

[2] Rule 13.1 of the Rules of the Supreme Court of the United States provides that a petition for a writ of certiorari to review a criminal judgment entered by a state court of last resort must be filed within 90 days after entry of judgment. Because day ninety fell on a Sunday in Petitioner's case, the deadline for filing a petition for certiorari, and thus the day the conviction became final, was extended to Monday, September 28, 2015.

3

U.S. 134, 150 (2012) (explaining judgment for petitioners who do not seek certiorari from United States Supreme Court becomes final at "'expiration of the time for seeking such review" - when the time for pursuing direct review in this Court, or in state court, expires.'"); see also Phillips v. Warden, 908 F.3d 667, 671 (11th Cir. 2018) (same).

Petitioner then had one year to file his federal habeas corpus petition or take other action to toll the one-year limitations period. The Court recognizes that, pursuant to 28 U.S.C. § 2244(d)(2), the one-year statute of limitations does not run while a properly filed application for state post-conviction relief or other collateral review is pending in state court. Cramer v. Sec'y, Dep't of Corr., 461 F.3d 1380, 1383 (11th Cir. 2006). Petitioner did not file any request for post-conviction relief until June 10, 2016, meaning 256 days of his one-year AEDPA statute of limitations had already expired. (Doc. no. 1, p. 3.) AEDPA's one-year clock was tolled throughout the state habeas corpus proceedings, including the time during which Petitioner sought a CPC from the Georgia Supreme Court and until issuance of the Supreme Court's remittitur on October 27, 2020. See Dolphy v. Warden, Cent. State Prison, 823 F.3d 1342, 1345 (11th Cir. 2016) (*per curiam*) ("[W]hen a state habeas petitioner seeks a certificate of probable cause from the Georgia Supreme Court and the Court denies the request, the petitioner's case becomes complete when the Court issues the remittitur for the denial." (citations omitted)).

Despite 256 days of Petitioner's one-year statute of limitations having elapsed prior to filing his state habeas petition, Petitioner then waited 259 days from October 27, 2020 - the conclusion of his state habeas proceedings - to file his federal habeas corpus petition on July 13, 2021. Because Petitioner filed his federal petition well over 100 days after the expiration

4

of the one-year statute of limitation, his current federal challenge is time-barred and should be dismissed.

> B. **The Limitations Period Was Not Otherwise Reset under AEDPA, and Petitioner Has Not Shown that He Is Entitled to Equitable Tolling or that a Fundamental Miscarriage of Justice Has Occurred**

Petitioner has not provided any explanation that would delay or reset his one-year statute of limitations under any statutory sections of AEDPA set forth above. Petitioner does not mention an impediment to filing or a newly recognized right, but he does suggest he has "new evidence" pertaining to his case. However, Petitioner only generally refers to the discovery package, the trial transcript, and the trial docket as supporting his arguments based on new evidence. (Doc. no. 1-1, pp. 1-2.) Moreover, Petitioner's stated grounds for relief concern actions by counsel and/or the trial court that were taken at, or before, trial with respect to evidence that was available at trial. For example, Petitioner challenges in his federal petition the use of an "impermissibly suggestive" photo lineup, (id. at 2), but the existence of the photo lineup was known to him at trial and even raised as an issue, albeit in a different context, on appeal. See Dailey, 774 S.E.2d at 674-75. Similarly, Petitioner raised claims in his state habeas proceedings based on the absence at trial of witness Alice Carter, (see doc. no. 12-3, pp. 6-9, 11-12), a fact known not only by the time of the state habeas proceedings, but obviously when she did not appear at trial and when raised as part of a hearsay objection on direct appeal. See Dailey, 774 S.E.2d at 674. While Petitioner compares trial testimony to discovery and concludes based on his own review that there are newly discovered discrepancies, the factual predicates for these claims are not new, and Petitioner has not shown otherwise. Thus, the Court concludes that there is no basis for statutory tolling of AEDPA's one-year statute of limitations as to any of Petitioner's claims.

Nevertheless, an otherwise untimely § 2254 petition may be considered if a petitioner can demonstrate that either he is entitled to equitable tolling or that a fundamental miscarriage of justice has occurred. Equitable tolling can be applied to prevent application of AEDPA's statutory deadline, but only if a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); see also Lawrence v. Florida, 549 U.S. 327, 336 (2007). Nevertheless, equitable tolling is typically applied sparingly, Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000), and is available "only in truly extraordinary circumstances." Johnson v. United States, 340 F.3d 1219, 1226 (11th Cir. 2003). The petitioner bears the burden of proving his entitlement to equitable tolling, San Martin v. McNeil, 633 F.3d 1257, 1268 (11th Cir. 2011), and will not prevail based upon a showing of either extraordinary circumstances or diligence alone; the petitioner must establish both. See Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1072 (11th Cir. 2011). Vague or conclusory allegations are insufficient to satisfy Petitioner's burden to show how he acted with diligence. Lugo v. Sec'y, Fla. Dep't of Corr., 750 F.3d 1198, 1209-10 (11th Cir. 2014). As to establishing an extraordinary circumstance, Petitioner must show a causal connection between the alleged circumstance and the late filing, San Martin, 633 F.3d at 1267, and the extraordinary circumstance must be "unavoidable even with diligence." Sandvik v. United States, 177 F.3d 1269, 1271-72 (11th Cir. 1999) (*per curiam*).

Consideration of an otherwise untimely petition for federal habeas corpus relief may also be appropriate upon a showing that a "fundamental miscarriage of justice" has occurred, whereby "a constitutional violation has probably resulted in the conviction of one who is

actually innocent." McQuiggin v. Perkins, 569 U.S. 383, 392 (2013) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)); see also Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1218-19 (11th Cir. 2000).  The actual innocence exception "is exceedingly narrow in scope," and a time-barred petitioner seeking to invoke it must be able "(1) to present 'new reliable evidence . . . that was not presented at trial,' and (2) to show 'that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt' in light of the new evidence." Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012) (citations omitted).  As the Supreme Court emphasized, "The miscarriage of justice exception, we underscore, applies to a severely confined category:  cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" McQuiggin, 569 U.S. at 394-95.

Here, Petitioner has not shown he satisfies the test for application of equitable tolling or that a miscarriage of justice will occur if his claims are not considered.  Petitioner has not shown extraordinary circumstances stood in his way and that he has been pursuing his rights diligently in the time between when his conviction became final and when he started seeking collateral relief in the state courts or again in federal court once his state collateral proceedings concluded.  Petitioner asserts in conclusory fashion that he "never received any notifications from appeal attorney."  (Doc. no. 16, p. 1.)  However, he provides no details about the notifications - for example, during briefing or after a decision issued - and he does not explain how he finally learned of the decision in his direct appeal.  He simply states, "Upon finding the final decision of Petitioner's direct appeal results," he started his state habeas proceedings.  (Id. at 1-2.)  There is no explanation of what efforts he undertook to find out the results of his direct appeal, let alone any details of when he learned his appeal had been rejected, such that

7

the Court could find Petitioner has been pursuing his rights diligently. See San Martin, 633 F.3d at 1270 (finding no showing of "reasonable diligence" necessary to apply equitable tolling where petitioner failed to show, for example, any attempt to contact court or counsel about case resolution, or provide explanation for delay in filing for collateral relief once petitioner learned of decision).

Nor has Petitioner shown any delay resulting from the diligent pursuant of his rights - indeed as described above there has been no showing of diligence - prevented him from timely filing a federal petition. In fact, because Petitioner does not state when he found out the results of his direct appeal, there is no way to tell how long he waited to file his state habeas petition, and there is certainly no explanation why he allowed 259 days to pass after the conclusion of those state collateral proceedings to file his federal petition. Pretermitting any argument concerning COVID-19 restrictions causing delay in filing his petition, (see doc. no. 14-1, p. 1), the Court observes Petitioner claims to have received his trial attorney's file in 2017, years before the appearance COVID-19. (Id. at 6; doc. no. 16, p. 2); see also United States v. Cruz, Case No. 15-cr-260(13), 2020 WL 5995260, at *2 (D. Minn. Oct. 9, 2020) (rejecting application of equitable tolling where petitioner failed to show efforts made to diligently pursue his rights before COVID-19 pandemic began). In any event, delays due to COVID-19 are not extraordinary circumstances for the purpose of equitable tolling. See Rush v. Sec'y, Fla. Dep't of Corr., No. 21-10218-C, 2021 WL 3134763, at *1 (11th Cir. June 22, 2021) (explaining COVID-19 not an extraordinary circumstance because all prisoners attempting to access legal resources subject to COVID-19 protocols).

Nor has Petitioner presented any evidence, much less new and reliable evidence, to show he did not commit the offense of which he was convicted such that no reasonable juror

8

would have found him guilty beyond a reasonable doubt. Indeed, he never claims he did not commit the offense of which he was convicted beyond a conclusory and factually unsupported statement that trial counsel failed to "investigate and present a defense of actual innocence." (Doc. no. 1-1, p. 1.) He relies only on his interpretation of discovery provided prior to trial and his after-the-fact comparison to information presented at trial.

Moreover, his stated grounds for relief focus on alleged legal errors committed by the trial court and counsel, not new evidence. (See, e.g., doc. no. 1; doc. no. 14.) To the extent Petitioner mentions the existence of a potentially exculpatory witness in Alice Carter, as discussed above and in the state direct appellate and collateral proceedings, Petitioner has not provided new evidence because she, as well as the information she possessed, was known to Petitioner and counsel at the time of trial and purposefully rejected for presentation at trial. (See doc. no. 12-3, pp. 6-9, 11-12 (discussing counsel's investigation of Ms. Carter's information and strategic decision not to call her as a witness based on determination she would not be helpful to the defense).) Nor does Petitioner explain how this purportedly new evidence overcomes the information of three witnesses who identified him as the person who hit the victim in the head. (Doc. no. 12-3, pp. 7-8, 12.)

To the extent Petitioner claims he had an alibi or impeachment information that could have been provided at trial had counsel conducted a proper investigation concerning a cashier at the store where the murder of which he was convicted occurred, (doc. no. 14-1, p. 16), that information is also not new evidence. Petitioner himself would have known even before the trial about his alleged whereabouts on the day of the murder. Likewise, Petitioner's arguments concerning what counsel should have done at trial are based on information gathered prior to trial and how that information was, or was not, used at trial. (See, e.g., doc. no. 14-1, pp. 16-

9

17). In sum, Petitioner has presented no new and reliable evidence to support, let alone satisfy, the high burden that no reasonable fact finder could have found him guilty of the offense for which he was convicted. See Ray v. Mitchem, 272 F. App'x 807, 810-11 (11th Cir. 2008) (*per curiam*) (emphasizing "actual innocence means factual innocence, not mere legal insufficiency") (citing Bousley v. United States, 523 U.S. 614, 623 (1998)).

Because Petitioner has not shown he had been pursuing his rights diligently and some extraordinary circumstance stood in his way to prevent him from timely filing his federal habeas corpus petition, or that a miscarriage of justice will occur if the untimely claims are dismissed, neither equitable tolling nor the fundamental miscarriage of justice exception saves the untimely petition from dismissal.

### III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED**, (doc. no. 11), this petition be **DISMISSED** as untimely, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 17th day of November, 2021, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA